ELMORE, Judge.
 

 *559
 
 Defendant Michael Lynn Hayes appeals his conviction for habitual impaired driving, challenging the admission of retrograde extrapolation testimony by the State's expert witness. That expert used defendant's 0.06 blood alcohol concentration (BAC) one hour and thirty-five minutes after the traffic stop to determine that defendant had a BAC of 0.08 at the time of the stop. To reach this conclusion, the expert assumed defendant was in a post-absorptive state at the time of the stop, meaning that alcohol was in the process of being eliminated from his bloodstream and his BAC was in decline. The expert admitted that while there were no facts to support this assumption, he made it regardless because his retrograde extrapolation analysis could not be done unless defendant was in a post-absorptive state.
 

 *560
 
 In accordance with
 
 State v. Babich
 
 , --- N.C. App. ----,
 
 797 S.E.2d 359
 
 (2017), we hold that the expert's testimony was inadmissible under the
 
 Daubert
 
 standard that applies to Rule 702 of the Rules of Evidence.
 

 *447
 
 "Although retrograde extrapolation testimony often will satisfy the
 
 Daubert
 
 test, in this case the testimony failed
 
 Daubert
 
 's 'fit' test because the expert's otherwise reliable analysis was not properly tied to the facts of this particular case."
 

 Id.
 

 at ----,
 
 797 S.E.2d at
 
 360 ;
 
 see
 

 Daubert v. Merrell Dow Pharmaceuticals, Inc.
 
 ,
 
 509 U.S. 579
 
 ,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed.2d 469
 
 (1993) (holding that "helpfulness" standard for admissibility of scientific testimony under Rule 702 of Federal Rules of Evidence requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility);
 
 see also
 

 State v. McGrady
 
 ,
 
 368 N.C. 880
 
 ,
 
 787 S.E.2d 1
 
 (2016) (holding that
 
 Daubert
 
 standard applies to admissibility determination of expert testimony under amended North Carolina evidentiary rule).
 

 The State concedes error under
 
 Babich
 
 ; thus, the only issue remaining on appeal is whether the erroneously-admitted testimony prejudiced defendant. Because defendant has met his burden of showing a reasonable possibility that a different result would have been reached had the expert's testimony been excluded, we find prejudicial error in defendant's conviction. Accordingly, we reverse the trial court's judgment and remand for a new trial.
 

 I. Background
 

 On 23 April 2014, Officer Adam Cabe of the Asheville Police Department conducted a traffic stop leading to defendant's arrest. Defendant was indicted on 7 June 2014 for habitual impaired driving in violation of
 
 N.C. Gen. Stat. § 20-138.5
 
 . The case came to trial on 6 June 2016, and Officer Cabe testified for the State regarding his interactions with defendant on the evening of the stop.
 

 At approximately 12:43 a.m., Officer Cabe was conducting stationary radar speed enforcement when he measured defendant driving 50 miles per hour in a 35 mile-per-hour zone. The officer followed defendant and initiated a traffic stop based on this observation of speeding. Defendant stopped his vehicle at a gas station, partially in a parking space and partially blocking a gas pump. Officer Cabe exited his patrol car and approached defendant's vehicle, noting that defendant appeared to place chewing gum in his mouth as the officer approached.
 

 When he reached the vehicle, Officer Cabe observed that defendant had glassy eyes, and he asked for defendant's driver's license. Defendant told Officer Cabe he did not have a driver's license and instead produced
 
 *561
 
 a North Carolina identification card, which Officer Cabe noticed defendant had difficulty retrieving from his wallet. During this initial interaction, defendant told the officer he was on his way home from working late and had just picked up his children, all four of whom were passengers in defendant's vehicle. Defendant also told the officer that defendant's oldest son and front-seat passenger was supposed to be driving at the time, but the young man did not know the way home from that particular area.
 

 Officer Cabe returned to his patrol car to run a record check on defendant, which revealed outstanding warrants for driving while license revoked and failure to pay child support. Officer Cabe then placed defendant under arrest based on these warrants. Defendant requested to use the gas station's bathroom prior to being transported to the detention center, but Officer Cabe denied his request; defendant was allowed to use the bathroom upon arrival at the center. As Officer Cabe handcuffed and began to search defendant, he detected a moderate odor of alcohol on defendant's breath. However, the officer did not ask defendant if he had been drinking and, if so, when; he did not ask defendant to perform a field sobriety test at the time of arrest; and he did not arrest defendant on suspicion of impaired driving.
 

 At trial, Officer Cabe testified that he believed defendant was appreciably impaired based on observations of speeding, chewing gum, glassy eyes, a moderate odor of alcohol, bathroom use, and defendant's subsequent refusal to perform a series of field sobriety tests once at the detention center. Defendant also refused to provide a breath sample, leading Officer Cabe to secure a search warrant in order to draw blood from defendant. The test results of that blood draw indicated that defendant's BAC one hour and thirty-five minutes after the traffic stop was 0.06 grams of alcohol per 100 milliliters of blood. At no
 
 *448
 
 time did Officer Cabe observe any direct signs of physical or mental impairment, such as difficulty walking or standing, slurred speech, or trouble answering questions and following directions.
 

 In addition to Officer Cabe, Mr. Daniel Cutler testified for the State as an expert witness in the field of blood alcohol pharmacology, physiology, and related research, including retrograde extrapolation. Retrograde extrapolation is a mathematical formula in which a known BAC test result is used to determine a driver's BAC at an earlier time (e.g., the time of a traffic stop).
 
 State v. Cook
 
 ,
 
 362 N.C. 285
 
 , 288,
 
 661 S.E.2d 874
 
 , 876 (2008). The analysis determines the earlier BAC on the basis of (1) the time elapsed between the traffic stop and the known BAC test, and (2) the rate of alcohol elimination from the driver's blood
 
 *562
 
 during the time between the traffic stop and the test.
 

 Id.
 

 In order for retrograde extrapolation to be applied accurately under these circumstances, the driver
 
 must
 
 be in the elimination or "post-absorptive" phase of alcohol consumption at the time of the stop. Mr. Cutler estimated that a driver may peak-that is, his body may go from absorbing alcohol to eliminating it-anywhere from thirty minutes to an hour and thirty minutes after he takes his final drink.
 

 Defendant objected to the admission of retrograde extrapolation evidence at trial pursuant to Rule 702(a) of the Rules of Evidence. During
 
 voir dire
 
 following the objection, Mr. Cutler testified that for purposes of his retrograde extrapolation analysis, he had to assume that defendant had already peaked and thus was in a post-absorptive state at the time of the traffic stop. Mr. Cutler made this assumption because the information used in his analysis, which was based on the State's evidence, admittedly lacked any indication as to when defendant last consumed alcohol. Consequently, the only case-specific data tying Mr. Cutler's analysis to these particular facts was the time elapsed from the traffic stop to the blood draw. In overruling defendant's objection, the trial court expressly acknowledged that Mr. Cutler's retrograde extrapolation analysis did not "specifically [apply] characteristics of this particular defendant." Mr. Cutler went on to tender his expert opinion-based on retrograde extrapolation analysis-that defendant's BAC was 0.08 at the time of the traffic stop.
 

 In its closing argument, the State repeatedly asserted to the jury that Mr. Cutler's retrograde extrapolation analysis was "uncontroverted" and "accepted in the legal community." The State also specifically stated to the jury that its evidence showed defendant's BAC at the relevant time was at least 0.08, which it based entirely on Mr. Cutler's analysis. For its part, the jury asked only two questions of the court during its nearly four hours of deliberations: first, "what defines a relevant time frame after driving for a proper blood alcohol test?," followed forty-five minutes later by a request to see the State's written extrapolation report.
 

 The jury ultimately found defendant guilty of impaired driving under
 
 N.C. Gen. Stat. § 20-138.1
 
 . Defendant pled guilty to additional charges of speeding and driving while license revoked, and he stipulated that he had previously been convicted of three counts of impaired driving, which elevated his conviction here to habitual status under
 
 N.C. Gen. Stat. § 20-138.5
 
 . Defendant entered notice of appeal in open court on 8 June 2016.
 

 *563
 

 II. Discussion
 

 On appeal, defendant relies on our decision in
 
 State v. Babich
 
 to support his contention that the trial court violated N.C. Gen. Stat. § 8C-1, Rule 702(a)(1) and (3) by allowing into evidence expert witness opinion testimony that was not based on sufficient facts or data and did not apply the relevant scientific principles reliably to the facts of the case. --- N.C. App. ----,
 
 797 S.E.2d 359
 
 (2017) (holding that BAC expert's assumption that defendant was in a post-absorptive state at the time of the traffic stop was not based on any facts, thus expert opinion was inadmissible). As to this particular argument, the State is unable to distinguish
 
 Babich
 
 from the case at bar. The State therefore concedes that Mr. Cutler's expert opinion regarding his retrograde extrapolation results should not have been admitted, and we agree. At issue then is whether the trial court's error prejudiced defendant.
 

 *449
 
 Judgment will not be set aside for mere error and nothing more; rather, "it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial[.]"
 
 State v. Rainey
 
 ,
 
 236 N.C. 738
 
 , 741,
 
 74 S.E.2d 39
 
 , 41 (1953). An error is not prejudicial unless "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a). The burden of showing such prejudice is on the defendant.
 

 Id.
 

 A defendant may be convicted of driving while impaired if the State proves that he drove "(1) [w]hile under the influence of an impairing substance; or (2) [a]fter having consumed sufficient alcohol that he has, at any relevant time after the driving, [a BAC] of 0.08 or more."
 
 N.C. Gen. Stat. § 20-138.1
 
 (a). The jury in this case was instructed on both alternative grounds.
 

 In
 
 Babich
 
 , we held that the evidence of the defendant's appreciable impairment was sufficient to show that, even without the challenged expert testimony, there was no reasonable possibility the jury would have reached a different conclusion. --- N.C. App. at ----,
 
 797 S.E.2d at
 
 365 ;
 
 see also
 

 State v. Taylor
 
 ,
 
 165 N.C. App. 750
 
 ,
 
 600 S.E.2d 483
 
 (2004) (holding that any error in admission of retrograde extrapolation testimony necessary to prove second ground in
 
 N.C. Gen. Stat. § 20-138.1
 
 (a) was harmless because of strength of evidence that defendant was appreciably impaired under the first ground). The evidence of appreciable impairment in
 
 Babich
 
 consisted of the following: the officer saw the defendant drive 80 to 90 miles per hour while approaching a red light, suddenly slow down, then drive through the red light at approximately
 
 *564
 
 45 miles per hour; the officer smelled alcohol on the defendant's breath; the defendant had glazed and bloodshot eyes; the defendant stumbled as she walked; the defendant ignored the officer's instructions and repeatedly talked over him as he attempted to speak with her; and the defendant did not properly perform the officer's field sobriety tests.
 

 Id.
 

 The case
 
 sub judice
 
 is distinguishable from
 
 Babich
 
 in this regard. Here, the State presented evidence that the officer believed defendant was appreciably impaired based on observations of speeding, chewing gum, glassy eyes, a moderate odor of alcohol, bathroom use, and refusal to perform a series of field sobriety tests. However, none of these observations amount to evidence of appreciable physical or mental impairment.
 

 On cross-examination, Officer Cabe testified that normal speeding and bathroom use were not identified in any of his training as observable factors that suggest impaired driving. The officer's remaining observations of chewing gum, glassy eyes, a moderate odor, and refusal to perform field sobriety tests merely suggest the recent consumption of an indeterminate amount of alcohol by a person with no incentive to provide evidence of potential impaired driving, especially given his prior record. Significantly, the officer testified that he never observed defendant exhibit slurred speech, reckless driving, weaving, difficulty with motor skills, difficulty answering questions, or difficulty following directions.
 

 Based on this lack of evidence of appreciable physical and mental impairment, defendant contends that the erroneously-admitted retrograde extrapolation testimony prejudiced defendant by playing a pivotal role in determining the outcome of his trial, and we agree. Accordingly, we find that defendant has met his burden of showing prejudicial error in the instant case.
 

 III. Conclusion
 

 For the reasons discussed above, we hold that the trial court erred in admitting the retrograde extrapolation testimony of the State's expert witness, and that this error materially prejudiced defendant. We therefore reverse defendant's conviction for driving while impaired and remand this case for a new trial.
 

 REVERSED AND REMANDED FOR A NEW TRIAL.
 

 Judges STROUD and TYSON concur.